POLAPHAT VERAVANICH (SBN 203964)
LIFE TECHNOLOGIES CORPORATION
5791 Van Allen Way
Carlsbad, CA 92008
Telephone:     (760) 476-6245
Facsimile:     (760) 476-6048
paul.veravanich@lifetech.com

MATTHEW D. MURPHEY (SBN 194111)
TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130
Tel:  (858) 509-6000
Fax:  (858) 224-0944
 matt.murphey@troutmansanders.com

DANIEL A. LADOW (admitted *pro hac vice*)
TROUTMAN SANDERS LLP
405 Lexington Avenue
New York, New York 10174
Tel:  (212) 704-6000
Fax:  (212) 704-6288
daniel.ladow@troutmansanders.com

Attorneys for Plaintiff LIFE TECHNOLOGIES
CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC BIOSCIENCES OF CALIFORNIA, INC.,<br><br>Defendant. | CASE NO. 5:11-CV-01582-PSG<br><br>**LIFE'S NOTICE OF MOTION AND MOTION TO COMPEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   January 17, 2012<br>Time:   10:00 a.m.<br>Place:  Courtroom 5, 4th Floor<br>Judge:  Hon. Paul S. Grewal |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on Tuesday, January 17, 2012,[1] at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Paul S. Grewal, 280 South First Street, San Jose, California, plaintiff Life Technologies Corporation. ("Life") will and hereby does move the Court for an order compelling defendant Pacific Biosciences of California, Inc. ("PacBio") to produce documents responsive to Life's Document Requests Nos. 5, 7, 13-15, 19, 25, 26, 29, 30, and 53, and to provide responses to Interrogatories Nos. 1, 3, 5, 7, 12, 14, and 15. This motion is based on this notice of motion and supporting memorandum of points and authorities; the supporting declaration of Daniel A. Ladow (the "Ladow Dec.") filed herewith; and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

**RELIEF REQUESTED**

Pursuant to Federal Rule of Civil Procedure 37(a)(1), Life seeks an order compelling PacBio to produce the documents and interrogatory responses set forth below pursuant to Civil L.R. 37-2 by January 10, 2012.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

PacBio wrongly seeks to avoid its discovery obligations by hiding behind the Court's December 7, 2011 Order focusing the current phase of this case on written description.  Contrary to PacBio's suggestion that nothing beyond the "four corners" of a patent or application is relevant to written description, courts routinely allow fact discovery relating to written description.  In fact, the Court's Order modifying the schedule specifically allows "appropriate fact discovery related solely to written description."  (DI 61).  Despite PacBio's initial promise to produce documents relevant to written description, PacBio now refuses and ignores the Court's

---

[1] Concurrently herewith, Life and PacBio are filing a joint stipulation to shorten time, pursuant to which this motion would be heard on January 3, 2012.  In the event the Court does not approve the parties' stipulation, Life is noticing this motion itself in accordance with the time specified in Civ. L.R. 7-2.

1   Order, taking the remarkable position that there is no appropriate fact discovery related to written

2   description because the only relevant information is within the "four corners" of the patent and

3   patent application.  Of course, what PacBio's inventor actually invented—if anything—and

4   whether he was actually in possession of any invention is relevant to written description issues

5   and may be evidenced by information beyond the "four corners" of the patent and application in

6   suit.  PacBio has made no production and declared its intent to neither produce documents nor

7   respond to interrogatories related to written description.  Life is therefore forced to seek the

8   Court's assistance in securing PacBio's compliance with its discovery obligations.

9   **II.      FACTUAL BACKGROUND**

10          The parties filed actions and cross-actions under 35 U.S.C. § 146 to review the rulings of

11  the Board of Patent Appeals and Interferences (the "Board") in Interference No. 105,677 (the

12  "Interference").  The Interference involved Life's U.S. Patent No. 7,329,492 (the "'492 patent")

13  to Hardin and PacBio's U.S. Application No. 11/459,182 (the "'182 application") to Williams.

14  Both concern single molecule sequencing of DNA.  Although experts were deposed in

15  connection with their declarations, as is typical of interference proceedings, the parties were not

16  permitted to engage in fact discovery and no fact witnesses submitted declarations or were

17  deposed.  In fact, Life unsuccessfully sought fact discovery on certain subjects on two occasions.

18  Ultimately, the Board found Life's involved claims unpatentable for lack of written description.

19  And of PacBio's twenty-one involved claims, all but four were similarly found unpatentable for

20  lack of written description.  Because four of PacBio's claims survived, the Board entered

21  judgment on priority against Life without any further substantive rulings.[2]

22          Life sought review of the Board's rulings under § 146 and in this Court to take advantage

23  of the ability "to take further testimony" specifically provided by the statute in the hope of

24  obtaining discovery unavailable during the Interference, and likewise unavailable in a direct

25  _____

26      [2] PacBio notified Life today that it intends to withdraw its appeal (in its cross-action) of the
    Board's decision finding 17 of its claims unpatentable for lack of written description.  Following

27  any such withdrawal, the issue of written description support for PacBio's four surviving
    Williams claims remains in this case.  The withdrawal of some Williams claims does not affect

28  any issue raised in this motion.

1  appeal to the Federal Circuit.  The Court ordered a trifurcated schedule in which the current, first

2  phase is limited to the written description issues.  DI 61.  The fact discovery period is accelerated

3  and scheduled to end on January 27, 2012.

4       To seek the evidence to which it is entitled under § 146 and the Court's Order, Life

5  served a first set of document requests and a first set of interrogatories.  Exh. A and Exh. B.[3]

6  The parties do not dispute that only discovery related to written description issues will be sought

7  during the current phase of the case.  The parties disagree, however, on whether PacBio is

8  obligated to provide any documents or substantive discovery responses relating to written

9  description—notwithstanding the express allowance of such discovery—as well as the extent to

10  which Life's discovery requests relate to written description.  With the requests and

11  interrogatories at issue, Life seeks information that is relevant to its attack on PacBio's written

12  description support and its defense against PacBio's attack on Life's written description.  PacBio

13  initially responded that it "will produce responsive, relevant, non-privileged documents within its

14  possession, custody, or control, if any, after conducting a reasonable search that relate to written

15  description."  Exh. C at, e.g., 6.  Subsequently, however, during a December 8, 2011 telephonic

16  meet-and-confer PacBio's counsel made clear its position that nothing outside the "four corners"

17  of the respective patent and patent application is relevant to written description.  On that basis,

18  PacBio now refuses to produce any information in response to Life's discovery requests directed

19  to written description issues.[4]  PacBio's position conflicts with both the law and the Court's

20  Order.

21  **III.    ARGUMENT**

22       Determining whether a patent application complies with the written description

23  requirement of 35 U.S.C. § 112 requires analyzing whether one of ordinary skill at the time the

---

25  [3] References to "Exh." herein are to exhibits attached to the Ladow Dec.  Exh. C and D are PacBio's objections and responses to Life's document requests and interrogatories.

26  [4] PacBio agreed today to produce the prosecution histories of the Williams patents related to
27  the '182 application.  Life is therefore not seeking to compel compliance with its Request No. 31, which sought those file histories.  PacBio confirmed today that it will not produce any other
28  fact discovery during the written descriptionphase of the case.

1   application is filed would understand the disclosure to convey that the inventor was in possession

2   of the claimed invention.  Here, PacBio's Williams '182 application lacks any working examples

3   demonstrating that Williams actually carried out the disclosed sequencing method.  Furthermore,

4   Life's experts opined that Williams' disclosure is limited to a single method that could not be

5   carried out then or now due to inherent problems and deficiencies.  Williams did not, in fact,

6   invent anything and therefore was not in possession of the claimed invention.  PacBio and its

7   experts, of course, take the opposite position.  Information regarding what method Williams

8   actually employed and whether he ever did so successfully—essentially whether he invented

9   anything at all—is therefore required to cross-examine Williams, PacBio, and its experts to

10  resolve the written description issues.  For example, PacBio's position that Williams' disclosure

11  conveys constructive possession of an invention to one of ordinary skill is untenable if in fact

12  Williams never actually possessed any invention.[5]  Life urges the Court to reject PacBio's

13  stonewalling tactics and order PacBio to comply with Life's pertinent discovery requests.

14      **A.      Discovery On Written Description Issues Is Appropriate At This Stage**

15          Section 146 specifically allows a party to "take further testimony," 35 U.S.C. § 146, and

16  Life is entitled to introduce new evidence on any issue raised in the Interference.  *Estee Lauder,*

17  *Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 592 (Fed. Cir. 1997).  In the Interference, Life's Motion 1

18  raised the issue of lack of written description support in PacBio's '182 application and PacBio's

19  Motion 2 raised the same issue as to Life's '492 patent.  And pursuant to the Court's Order, in

20  this phase of the case the only issue being tried is written description.  Clearly, written

21  description issues are ripe for discovery.

22          Under established Federal Circuit precedent, the scope of admissible evidence in § 146

23  actions is identical to that in any other civil case.  *Streck, Inc. v. Research & Diagnostic Sys.*, 659

24  F.3d 1186, 1190 (Fed. Cir. 2011).  Since Life is entitled to introduce new evidence on written

25  description, it follows that Life is entitled to fact discovery relevant to written description.  Like

26  ――――――――――――――

27          [5] In addition to written description issues surrounding the '182 application, Life seeks
    information from PacBio relevant to PacBio's challenge of Life's '492 patent on written
28  description grounds.

any action in federal court, discovery in a § 146 action is governed by the Federal Rules of Civil Procedure. *Streck,* 659 F.3d at 1196 (the "purpose of § 146 is to bring to bear . . . the procedures and rules of federal litigation"). Thus, the discovery provisions of the Federal Rules determine whether Life is entitled to the requested discovery. As this Court has set out:

> Pursuant to *Fed. R. Civ. P.* 26, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. The court must limit the frequency or extent of discovery if it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, or the burden or expense of the proposed discovery outweighs its likely benefit.

*Genentech, Inc. v. Trs. of the Univ. of Pa.*, 2011 U.S. Dist. LEXIS 61902, at *4 (N.D. Cal. June 9, 2011). PacBio bears the burden of justifying its refusal to participate in discovery, and this burden is one that PacBio cannot satisfy. *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 2010 U.S. Dist. LEXIS 23049, at *4 (E.D. Cal. Mar. 1, 2010) ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.").

## B. The Fact Discovery Regarding Written Discovery Requested By Life Is Proper Under The Federal Rules

A specification satisfies the written description requirement of Section 112 only when it "adequately describes an invention [and] reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date" of the application. *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361-1362 (Fed. Cir. 2011). This requirement ensures that the scope of the right to exclude, as set forth in the claims, does not exceed the scope of the inventor's contribution to the field of art as described in the specification. *ICU Med. Inc. v. Alaris Med. Sys. Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009). If, for example, the specification "just represents a wish, or arguably a plan for future research," it fails to satisfy the written description requirement. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1357 (Fed. Cir. 2010). Similarly, a patent lacks an adequate written description if it fails to "demonstrate constructive possession" of a claimed invention. *Centocor Ortho Biotech,*

1   *Inc. v. Abbott Labs*, 636 F. 3d 1341, 1353 (Fed. Cir. 2011).  Thus, the specification must

2   "disclose the technologic knowledge upon which the patent is based."  *Ariad*, 598 F.3d at 1355.

3          It is well-established that written description is an issue of fact.  *Ariad*, 598 F.3d at 1351.

4   And, the Federal Circuit sets forth a number of factors for evaluating the adequacy of the

5   disclosure as a factual matter, including "the existing knowledge in the particular field, the extent

6   and content of the prior art, the maturity of the science or technology, [and] the predictability of

7   the aspect at issue."  *Id*.  All of these areas are ripe for discovery in this phase of the case, and

8   Life's requests are focused on these topics.

9          For example, during the Interference Life presented expert evidence that the method

10  proposed in PacBio's '182 application could not be performed in 1998 when Williams filed his

11  first provisional application, and could not even be performed at the time of the Interference.

12  PacBio, of course, presented competing expert evidence.  However, neither side or their experts

13  could rely on the fruits of any fact discovery to support their positions because there was none.

14  This case provides Life with its first opportunity to fill in any alleged factual gaps in its written

15  description positions.

16         Obviously, the inventor's own failures as of the time of filing—and then thereafter with

17  his own disclosure in hand—are highly probative of whether that disclosure is in fact anything

18  more than "a wish, or arguably a plan for future research," as required by the Federal Circuit in

19  *Ariad* and by many other cases.  As set forth in *Ariad*, if the inventor did not in fact invent

20  anything, he could not have been in possession of the claimed invention at the relevant time.

21  And here, any evidence of Williams' own subsequent failures to practice the method proposed in

22  his specification contradicts PacBio's position that one of ordinary skill in the art would believe

23  that the '182 patent application demonstrated that Williams was in possession of the claimed

24  invention.  Such evidence would further establish that the specification cannot have set forth

25  adequate "technologic knowledge" to demonstrate to a person of ordinary skill in the art that

26  Williams had "constructive possession" of an actual invention.  This is particularly true here

27  since the '182 patent application sets forth no working example of the claimed sequencing

28  method.  Thus, fact discovery relating to Williams' attempts to practice what is set forth in his

1   specification is at the very least reasonably calculated to lead to the discovery of admissible

2   evidence on the issue of whether the written description in the '182 application is adequate.

3   Indeed, because of the particular fact pattern presented here—the application includes no

4   working examples even purporting to show that Williams had carried out the disclosed

5   sequencing method, and Life's experts opined that the '182 application method was not workable

6   then or even years later—the discovery sought from PacBio addresses the very core of the

7   written description issues permeating the '182 application.

8       This Court has compelled fact discovery related to written description on precisely this

9   ground, namely the relevance of failed experimentation.  As in the present case, the dispute in

10  the *Genentech* case centered on "the appropriate scope of discovery related to the defenses of

11  enablement and written description in life sciences patent cases."  *Genentech*, 2011 U.S. Dist.

12  LEXIS at *1.  There, the Court found evidence of the inventor's failed experimentation relevant

13  to written description, in addition to its relevance to enablement.  *Id*. at *11-12.  The scope of

14  documents ordered produced included—but also went beyond—failed attempts to practice the

15  specific claimed methods.  *Id*.  Here, evidence of failed attempts to practice the method disclosed

16  in PacBio's '182 application would contradict PacBio's theory that Williams was in possession

17  of an invention, and would likewise confirm Life's position that Williams did not "possess what

18  he claimed."  Of course, in *Genentech* the defendant appears to have voluntarily produced much

19  responsive information, and the dispute concerned additional production.  Here, in stark contrast,

20  PacBio refuses to produce anything (other than its Williams patent prosecution histories) in

21  response to Life's requests targeting written description issues.

22      PacBio cannot successfully assert that the limited discovery Life seeks is cumulative,

23  duplicative, unduly burdensome, or disproportionate under Rule 26(b)(2)(C).  The core relevance

24  to written description issues of evidence regarding efforts to practice the method proposed in the

25  '182 application, including Williams' failures in those efforts, is demonstrated above.  It is

26  undisputed that PacBio possesses or controls the records generated by Williams' work related to

27  the '182 application.  PacBio's complete refusal to produce that information is therefore

28  remarkable.  This dispute does not raise an issue of requests being duplicative or burdensome.

7

1   Rather, it is about whether PacBio can unilaterally ignore the discovery obligations imposed on it

2   by the Federal Rules of Civil Procedure and this Court.

3           PacBio should be compelled to comply with its discovery obligations and produce

4   materials and information responsive to Life's written description-related requests.  And should

5   PacBio fail to substantively respond to Life's written description-related requests, PacBio should

6   be precluded from offering any evidence or argument on (1) the issue of written description

7   support in the Williams '182 application and (2) the issue of written description support in the

8   Hardin '492 patent.

9           **C.     Specific Document Requests**

10          Pursuant to Civil L.R. 37-2, the full text of the individual document requests at issue,

11  together with PacBio's form objections, are set forth below and grouped by the issues to which

12  they relate.[6]  Request Nos. 13-15, 19, 26, and 30 seek documents pertaining to attempts to

13  practice aspects of the method disclosed in the specification of PacBio's '182 application.

14  Request Nos. 5 and 7 focus on PacBio's position that the method disclosed in the '182

15  application can work even though it requires incorporation of base- or sugar labeled nucleotides,

16  and PacBio's contradictory statement in  scientific articles (including the Eid paper, authored by

17  no fewer than 54 PacBio scientists) that such a method "cannot be used."  Request No. 53 simply

18  asks for documents identified by PacBio in responding to interrogatories.

19          Request No. 25 and 29 address PacBio's attack on the written description support in

20  Life's '492 patent.  Specifically, the Board held Life's involved claims invalid for lack of written

21  description, finding that the specification only discloses methods using a tag "located at or near,

22  associated with, or covalently bonded to a site on the polymerase."  DI 1, Complaint, Exh. B:

23  Board Decision on Motions at 22.  Accordingly, Request Nos. 25 and 29 seek documents

24  relevant to showing that use of tags on proteins associated with the polymerase is distinct from

25

26          [6] The "Williams patents" refer to the patent family that includes PacBio's '182 application

27  and shares a common priority claim.  *See* definition in Exh. A at 3.  Some requests refer to LI-
    COR, John Williams' employer and the company from which PacBio acquired the Williams
    patents.

28

the use of tagged polymerases, thereby providing written description for broader claims than

those arguably supported by a narrower disclosure of tagged polymerases.

### 1. PacBio Written Description:

**REQUEST NO. 5**
**All documents and things reflecting the basis for, or tending to support or contradict, any allegation that a DNA sequencing method requiring successive incorporation of base- or sugar labeled or tagged (e.g., a fluorescent dye, label or tag) or quenched (e.g., a fluorescence quencher) nucleotides can work.**

**RESPONSE TO REQUEST NO. 5**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "[a]ll documents and things reflecting the basis for, or tending to support or contradict, any allegation." PacBio objects to this request insofar as the terms "requiring," "can work" and "successive incorporation" are undefined and ambiguous. PacBio objects to this request to the extent that it seeks documents that (i) are protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) are not relevant to the claims or defenses at issue in this case; (iii) are outside of its possession, custody, or control; or (iv) are equally accessible to Life, are already in Life's possession, or are publicly available. PacBio objects to this request as premature to the extent that the responses may be the subject of expert testimony. PacBio will provide expert reports in accordance with the Court's discovery schedule. PacBio also objects to this request as premature and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents related to PacBio's priority case.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable search that relate to written description. Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

**REQUEST NO. 7**
**All documents and things, including research done by or on behalf of or acquired by PacBio, and scientific papers in PacBio's possession reflecting research by others, reflecting the basis for, or tending to support or contradict, the following statement in the Eid paper (at 134): "Other DNA sequencing approaches have used base-linked fluorescent nucleotides. These cannot be used in real-time because they are poorly incorporated in consecutive positions by DNA polymerase."**

**RESPONSE TO REQUEST NO. 7**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "[a]ll documents and things" and documents and things concerning "research done by or on behalf of or acquired

by PacBio," and contains the terms "reflecting research by others," "reflecting the basis for," or "tending to support or contradict." PacBio objects to this request as it seeks documents that are (i) protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not relevant to the claims or defenses at issue in this case; (iii) outside of PacBio's possession, custody, or control; or (iv) equally accessible to Life, are already in Life's possession, or are publicly available. PacBio objects to this request as premature to the extent that it seeks documents that are related to PacBio's priority case.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable search that relate to written description. Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

**REQUEST NO. 13**
**All documents and things concerning any attempt to practice any single molecule sequencing method disclosed in the Williams patents.**

**RESPONSE TO REQUEST NO. 13**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "[a]ll documents and things concerning," "any attempt," and "any single molecule sequencing method disclosed in the Williams patents." PacBio objects to this request to the extent that it seeks documents that are (i) not relevant to the claims or defenses of any party and are not reasonably calculated lead to admissible evidence; and (ii) outside of PacBio's possession, custody, or control. PacBio objects to this request to the extent that it seeks documents that constitute and/or evidence the confidential business information of PacBio and a Protective Order has not been entered in this case. PacBio objects to this request as premature to the extent that it seeks documents that are related to PacBio's priority case.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable search that relate to written description. Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

**REQUEST NO. 14**
**All documents and things concerning the extent to which any single molecule sequencing method disclosed in the Williams patents was the subject of research and development by John Williams, LI-COR or PacBio, and the circumstances and reasons relating to whether and why such research and development was halted and PacBio did not commercialize any single molecule sequencing method based on the disclosure in any Williams patent, or which otherwise involved the use of a quencher on the nucleotide.**

**RESPONSE TO REQUEST NO. 14**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this compound

10

request as it is ambiguous. PacBio objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "[a]ll documents and things concerning," and addresses "research and development by John Williams, LI-COR or PacBio" of "any single molecule sequencing method disclosed in the Williams patents," "reasons relating," "any single molecule sequencing method based on the disclosure in any Williams patent, " and "any single molecule sequencing method . . . which otherwise involved the use of a quencher on the nucleotide." PacBio objects to this request to the extent that it calls for documents that (i) constitute and/or evidence the confidential business information of PacBio and a Protective Order has not been entered in this case; (ii) are not relevant to the claims or defenses of any party and are not reasonably calculated lead to admissible evidence insofar as it requests documents concerning research and development by parties other than John Williams; (iii) are protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity; and (iv) are outside of PacBio's possession, custody, or control. PacBio objects to this request as premature as it seeks documents that relate to PacBio's priority case.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable search that relate to written description. Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

**REQUEST NO. 15**
**All documents and things, to the extent not produced in response to another request, relating to, reflecting, or evidencing problems, difficulties, or failures in getting any single molecule sequencing method disclosed in any Williams patent to work or to work reliably, including but not limited to documents concerning the solution concentration of labeled nucleotides, background signal noise from not completely quenched labeled nucleotides, diffusion of fluorescent impurities, or for other reasons, the ability of the optical detection system and equipment used (whether total internal reflection fluorescence (TIRF) microscopy or otherwise) to accurately and reliably detect the target nucleotide, and DNA chain termination and/or unfaithful replication due to the incorporation of a sugar- or base-labeled nucleotide.**

**RESPONSE TO REQUEST NO. 15**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this compound request insofar as the terms "work reliably," "accurately and reliably," and "unfaithful replication" are undefined and ambiguous. PacBio objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "[a]ll documents and things," and uses the terms "relating to, reflecting or evidencing," "any single molecule sequencing method," "disclosed in any Williams patent," "including but not limited to," "documents concerning," "or otherwise," and "or for other reasons." PacBio objects to this request to the extent that it seeks documents that are (i) not relevant to the claims or defenses of any party and are not reasonably calculated lead to admissible evidence; and (ii) are outside of PacBio's possession, custody, or control. PacBio objects to this request to the extent that it seeks documents that constitute and/or evidence the confidential business information of PacBio and a Protective Order has not been entered in this case. PacBio objects to this request as premature to the extent that the responses may be the subject of expert testimony.

11

PacBio will provide expert reports in accordance with the Court's discovery schedule. PacBio objects to this request as premature to the extent that it seeks documents that relate to PacBio's priority case.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable search that relate to written description. Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

**REQUEST NO. 19**
**For each embodiment found in the '182 application, all documents and things that evidence that such an embodiment works or does not work or does not work reliably.**

**RESPONSE TO REQUEST NO. 19**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "[f]or each embodiment found in the '182 application, all documents and things" and uses the term "evidence." PacBio objects to this request insofar as the term "work reliably" is undefined and ambiguous. PacBio objects to this request as (i) not reasonably calculated to lead to the discovery of admissible evidence; (ii) premature as it seeks documents that relate to PacBio's priority case; (iii) to the extent that it seeks documents that are equally accessible to Life, are already in Life's possession, or are publicly available; and (iv) to the extent it seeks documents that are outside of PacBio's possession, custody or control. PacBio objects to this request as premature to the extent that the responses may be the subject of expert testimony. PacBio will provide expert reports in accordance with the Court's discovery schedule.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable search that relate to written description. Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

**REQUEST NO. 26**
**All documents relating to PacBio's, LI-COR's, or Cornell's attempts to conduct single molecule sequencing involving at least in part a base acting as a quencher of a tag (e.g., a fluorescent tag) on the phosphate of the nucleotide, e.g., the "self-quenching" referred to in the Trautman declaration which is Interference Exhibit 1091 at page 27.**

**RESPONSE TO REQUEST NO. 26**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "[a]ll documents" and uses the terms "attempts" and "involving at least in part." PacBio objects to this request as ambiguous insofar as the terms "single molecule sequencing" and "involving at least in part" are undefined and ambiguous. PacBio objects to this request to the

12

extent that it seeks documents that are (i) not reasonably calculated to lead to the discovery of admissible evidence; (ii) outside of PacBio's possession, custody, or control; or (iii) equally accessible to Life, are already in Life's possession, or are publicly available. PacBio objects to this request as premature as it seeks documents that relate to PacBio's priority case. PacBio objects to this request to the extent that it seeks documents that constitute and/or evidence the confidential business information of PacBio and a Protective Order has not been entered in this case.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable search that relate to written description.  Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

**REQUEST NO. 30**
**All documents relating to research and development John Williams, LI-COR, or PacBio have performed to develop (i) a set of four distinctly labeled nucleotides with quenchers and/or (ii) a set of two distinctly labeled nucleotides with quenchers and/or use such sets in carrying out any of the single molecule sequencing methods disclosed in the Williams patents.**

**RESPONSE TO REQUEST NO. 30**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "[a]ll documents" and uses the terms "relating to" and "carrying out." PacBio objects to this request as ambiguous insofar as the term "carrying out" is undefined and ambiguous. PacBio objects to this request to the extent that it seeks documents that are (i) not reasonably calculated to lead to the discovery of admissible evidence; (ii) outside of PacBio's possession, custody, or control; or (iii) constitute and/or evidence the confidential business information of PacBio and a Protective Order has not been entered in this case. PacBio objects to this request as premature as it seeks documents that relate to PacBio's priority case.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable search that relate to written description. Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

### 2.    Life Written Description:

**REQUEST NO. 25**
**All documents relating to PacBio's, LI-COR's, or Cornell's attempts to conduct single molecule sequencing involving at least in part placing a tag, label or quencher on a protein associated with the polymerase.**

**RESPONSE TO REQUEST NO. 25**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this

13

point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the

discovery of admissible evidence insofar as it requests "[a]ll documents relating to" and uses the terms "attempts" and "single molecule sequencing." PacBio objects to this request as ambiguous insofar as the terms "single molecule sequencing," "tag," "label," "quencher" and "associated with the polymerase" are undefined and ambiguous. PacBio objects to this request to the extent that it seeks documents that are (i) not reasonably calculated to lead to the discovery of admissible evidence; (ii) outside of PacBio's possession, custody, or control; or (iii) equally accessible to Life, are already in Life's possession, or are publicly available. PacBio objects to this request to the extent that it seeks documents that constitute and/or evidence the confidential business information of PacBio and a Protective Order has not been entered in this case. PacBio objects to this request as premature as it seeks documents that relate to PacBio's priority case.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable search that relate to written description.  Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

**REQUEST NO. 29**
**All documents referencing, or reflecting a discussion of, tagged agents associated with a polymerase (including but not limited to a tag on a protein associated with a polymerase), including but not limited to such agents or proteins used in single molecule sequencing.**

**RESPONSE TO REQUEST NO. 29**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "[a]ll documents" and uses the terms "referencing," "reflecting" "including but not limited to" and "single molecule sequencing." PacBio objects to this request as ambiguous insofar as the terms "single molecule sequencing," "tagged agents," "associated with a polymerase" and "such agents or proteins used in single molecule sequencing" are undefined and ambiguous. PacBio objects to this request to the extent that it seeks documents that are (i) not reasonably calculated to lead to the discovery of admissible evidence; (ii) outside of PacBio's possession, custody, or control; (iii) equally accessible to Life, are already in Life's possession, or are publicly available; or (iv) protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. PacBio objects to this request to the extent that it seeks documents that constitute and/or evidence the confidential business information of PacBio and a Protective Order has not been entered in this case. PacBio objects to this request as premature to the extent that the responses may be the subject of expert testimony. PacBio will provide expert reports in accordance with the Court's discovery schedule.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable

search that relate to written description.  Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

**REQUEST NO. 53**
**All documents and things identified in responding to, or responsive to, any interrogatories served on PacBio in this case.**

**RESPONSE TO REQUEST NO. 53**
PacBio objects to this request to the extent that it seeks documents related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio further objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "[a]ll documents and things" and seeks documents "identified in responding to, or responsive to, any interrogatories served." PacBio further objects to the extent this request is duplicative of any other discovery request. PacBio hereby incorporates all objections to any and all interrogatories served by any party on PacBio in this case, and reserves the right to raise further objections to this document request after each interrogatory is received. PacBio also objects to this request as premature and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents related to PacBio's priority case.

Subject to and without waiving the foregoing objections and its General Objections, PacBio will produce responsive, relevant, non-privileged documents within its possession, custody, or control, if any, after conducting a reasonable search that relate to written description. Such documents will be produced at a place or in a manner mutually agreed upon in writing by the Parties.

## D.       Specific Interrogatories

Pursuant to Civil L.R. 37-2, the full text of the individual interrogatories that are the subject of this motion, along with PacBio's objections, are set forth below.  Interrogatory Nos. 1, 5, 7, 12, 14, and 15 relate directly to attempts to practice aspects of the method disclosed in the specification of PacBio's '182 application, parallel to the document requests on that topic set forth above.  For purposes of the current phase of this case, Life will narrow Interrogatory No. 1 as indicated below to only relate to written description.  Interrogatory No. 3, which seeks information regarding collaborations between PacBio's expert Dr. Trautman and some of PacBio's founders (including Jonas Korlach and Stephen Turner) at Cornell University—about which he testified during his deposition in the Interference—is additionally relevant to Dr. Trautman's credibility.

**INTERROGATORY NO. 1 [as initially propounded]**
If PacBio disagrees with any finding or conclusion of the Board in the Interference, including without limitation the Board's conclusions regarding the lack of written description support for claims 73-78, 80, 82, and 85-93 of the '182 application, explain in detail the factual and legal bases for PacBio's disagreement.

15

**INTERROGATORY NO. 1 [as narrowed]**
**If PacBio disagrees with any finding or conclusion of the Board in the Interference regarding the lack of written description support for claims 73-78, 80, 82, and 85-93 of the '182 application, explain in detail the factual and legal bases for PacBio's disagreement.**

**RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 1 [as initially propounded]**
PacBio objects to this request to the extent that it seeks information related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio objects to this Interrogatory as a compound interrogatory asking multiple questions about "any finding or conclusion of the Board" with which PacBio disagrees. PacBio further objects to these multiple interrogatories to the extent they seek information protected from discovery by the attorney-client privilege or the attorney work-product doctrine. PacBio further objects to these interrogatories as premature in that they call for information that is properly the subject of expert discovery before the time for such discovery set by the Court.

Subject to and without waiving the foregoing general and specific objections, PacBio will respond to these Interrogatories at the time and in a manner provided by the Court's Scheduling Order, the Federal Rules of Civil Procedure and the applicable Local Rules. PacBio also directs Life Technologies to PacBio's Cross-Action Complaint filed April 14, 2011 (Document 11), Answer filed on May 23, 2011 (Document 33) and the record in Interference No. 105,677 SGL ("the '677 Interference").

**INTERROGATORY NO. 3**
**Describe in detail all collaborations, involving single-molecule DNA sequencing by continuous synthesis, between Jay Trautman, Ph.D., and a research group at Cornell including Jonas Korlach, and identify all individuals involved in and documents relating to the collaboration(s).**

**RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 3**
PacBio objects to this request to the extent that it seeks information related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio objects to this Interrogatory as a compound interrogatory asking three questions: describe in detail all collaborations, identify all individuals involved, and identify all documents relating thereto. PacBio further objects to these interrogatories as overly broad, unduly burdensome, and seeking information that is neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to the parties, patents or subject matter of the patents involved in this action.  Neither Jonas Korlach, nor his research at Cornell are involved in this action or the underlying interference. PacBio further objects to these interrogatories as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as they are not limited to any particular time period.

Subject to and without waiving the foregoing objections and its General Objections, PacBio directs Life Technologies to the record in the '677 Interference. PacBio reserves the right to supplement this response.

**INTERROGATORY NO. 5**
**Describe the circumstances surrounding and the reasons for the almost 8-year delay between the date of conception alleged in the Williams Priority Statement and the date of the purported first actual reduction to practice alleged in that Priority Statement, including problems, difficulties, or failures in getting any single molecule sequencing method disclosed in any Williams patent to work; identify the individuals involved; and identify all documents relating thereto.**

**RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 5**
PacBio objects to this request to the extent that it seeks information related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio objects to this Interrogatory as a compound interrogatory asking three questions: describe the circumstances, identify the individuals involved and identify all documents. PacBio also objects to these interrogatories as premature as they seek information that relates to PacBio's priority case. As explained in the Case Management Order of September 29, 2011, the Court limited the issues at this time to patentability (written description, enablement, and novelty/obviousness) and accorded benefit. PacBio further objects to these requests because they contain the terms "circumstances surrounding," "problems," "difficulties," and "failures," which are ambiguous and not defined.

Subject to and without waiving the foregoing objections and its General Objections, PacBio directs Life Technologies to the record in the '677 Interference. PacBio reserves the right to supplement this response.

**INTERROGATORY NO. 7**
**Identify each embodiment within the Count in the Interference, if any, that is disclosed in the '182 application, not including the claims thereof; identify by column and line where such embodiment is disclosed; and for each such identified embodiment, describe in detail any alleged earliest actual reduction to practice, including but not limited to when it was made and the individuals involved, and identify all documents relating thereto.**

**RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 7**
PacBio objects to this request to the extent that it seeks information related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio objects to this Interrogatory because Life has already served interrogatory requests exceeding the number provided for in Federal Rules of Civil Procedure and the applicable Local Rules, and leave to serve additional interrogatories has not been granted to Life.

PacBio objects to this interrogatory as a compound interrogatory asking five questions: identify each embodiment, identify by column and line, describe in detail, identify the individuals involved and identify all documents. PacBio further objects to these interrogatories as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as each of these five questions relates to each embodiment within the Count of the '677 Interference that is disclosed in the '182 application. PacBio further objects to these interrogatories as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as they ask PacBio to "[i]dentify each embodiment," "identify by column and line where such embodiment is disclosed," "for each such identified embodiment, describe in detail

any alleged earliest actual reduction to practice," and "identify all documents relating thereto." PacBio further objects to these interrogatories to the extent that they seek information that is (i) protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not relevant to the claims or defenses at issue in this case; (iii) equally accessible to Life, is already in Life's possession, or is publicly available; or (iv) to the extent that it seeks information that constitutes and/or evidences the confidential business information of PacBio and a Protective Order has not been entered in this case.

PacBio further objects to these interrogatories as premature as they seek information that relates to PacBio's priority case. As explained in the Case Management Order of September 29, 2011, the Court limited the issues at this time to patentability (written description, enablement, and novelty/obviousness) and accorded benefit.

Subject to and without waiving the foregoing objections and its General Objections, PacBio directs Life Technologies to the record in the '677 Interference. PacBio reserves the right to supplement this response.

**INTERROGATORY NO. 12**
**Identify and describe in detail any research and development by John Williams, LI-COR, Cornell and/or PacBio, or anyone else, where the use of a quencher or tag on the base or sugar moiety of the nucleotides caused or contributed to termination of the synthesis of a nucleic acid strand, and/or caused or contributed to unfaithful replication of the complement of the target sequence, and, if PacBio contends this problem was surmounted, explain in detail when and how this occurred, including identifying the polymerase used, the functional linker and quencher combination, the functional linker and tag or dye combination, and the biochemical reaction conditions which allowed the continued faithful replication of the complementary strand, and identify the individuals involved and all documents relating thereto.**

**RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 12**
PacBio objects to this request to the extent that it seeks information related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio objects to this Interrogatory because Life has already served interrogatory requests exceeding the number provided for in Federal Rules of Civil Procedure and the applicable Local Rules, and leave to serve additional interrogatories has not been granted to Life.

PacBio objects to this Interrogatory as a compound interrogatory asking incalculable questions: identify, describe in detail, explain in detail when, explain in detail how, identify the polymerase, identify the functional linker and quencher combination, identify the functional linker and tag or dye combination, identify the biochemical reaction conditions, identify the individuals involved and identify all documents for each of John Williams, LI-COR, Cornell, PacBio, or anyone else. PacBio further objects to these interrogatories as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as each of the questions relates to incalculable parties: John Williams, LI-COR Cornell, PacBio and anyone else. PacBio further objects to these interrogatories as vague because the terms "caused or contributed," "unfaithful replication," surmounted" and "continued faithful replication" are ambiguous and not defined. PacBio further objects to these interrogatories as premature in that they

18

call for information that is properly the subject of expert discovery before the time for such discovery set by the Court. PacBio further objects to these interrogatories as they relate to information that is outside of PacBio's possession, custody, or control. PacBio further objects to these interrogatories as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as they are not limited to any particular time period. PacBio objects to these interrogatories as premature as they seek information that is related to PacBio's priority case. As explained in the Case Management Order of September 29, 2011, the Court limited the issues at this time to patentability (written description, enablement, and novelty/obviousness) and accorded benefit.

Subject to and without waiving the foregoing objections and its General Objections, PacBio directs Life Technologies to the record in the '677 Interference. PacBio reserves the right to supplement this response.

**INTERROGATORY NO. 14**
**State whether John Williams, LI-COR, Cornell and/or PacBio used total internal reflection fluorescence (TIRF) microscopy as part of an effort to perform any of the single molecule sequencing methods disclosed in the Williams patents and, if so, state whether such TIRF microscopy was used successfully to carry out such a method and, if not, explain in what way it was not successful; identify all such experiments, the individuals involved and all documents relating thereto.**

**RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 14**
PacBio objects to this request to the extent that it seeks information related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio objects to this Interrogatory because Life has already served interrogatory requests exceeding the number provided for in Federal Rules of Civil Procedure and the applicable Local Rules, and leave to serve additional interrogatories has not been granted to Life.

PacBio objects to this Interrogatory as a compound interrogatory asking twenty-four questions: state whether, state whether, explain why, identify all such experiments, identify the individuals involved and identify all documents as to each of four entities: John Williams, LICOR, Cornell and PacBio. PacBio further objects to these interrogatories as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as each of the twenty-four questions relates to multiple parties: John Williams, LI-COR, Cornell and PacBio.  PacBio further objects to these interrogatories as ambiguous because they refer to the terms "effort to perform," "used successfully" and "not successful," which are vague and not defined. PacBio further objects to these interrogatories as premature to the extent they call for information that is properly the subject of expert discovery before the time for such discovery set by the Court. PacBio further objects to these interrogatories to the extent that they relate to information that is outside of PacBio's possession, custody, or control. PacBio further objects to these interrogatories as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as they are not limited to any particular time period. PacBio objects to these interrogatories as premature as they seek information that is related to PacBio's priority case. As explained in the Case Management Order of September 29, 2011, the Court limited the issues at this time to patentability (written description, enablement, and novelty/obviousness) and accorded benefit.

LIFE'S MOTION TO COMPEL

5:11-CV-01582-PSG

NEWYORK01 1474280v1

Subject to and without waiving the foregoing objections and its General Objections, PacBio directs Life Technologies to the record in the '677 Interference. PacBio reserves the right to supplement this response.

**INTERROGATORY NO. 15**
**Describe the research and development John Williams, LI-COR, and/or PacBio have performed to develop (i) a set of four distinctly labeled nucleotides with quenchers and/or (ii) a set of two distinctly labeled nucleotides with quenchers and/or use such sets in carrying out any of the single molecule sequencing methods disclosed in the Williams patents; identify all such experiments, the individuals involved and all documents relating thereto.**

**RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 15**
PacBio objects to this request to the extent that it seeks information related to issues other than written description, as the parties have agreed to limit discovery at this point to the written description issue, and the parties will approach the Court to obtain an order so limiting discovery. PacBio objects to this Interrogatory because Life has already served interrogatory requests exceeding the number provided for in Federal Rules of Civil Procedure and the applicable Local Rules, and leave to serve additional interrogatories has not been granted to Life.

PacBio objects to this Interrogatory as a compound interrogatory asking thirty questions: describe the research and development for (i), describe the research and development for (ii), describe the use of (i), describe the use of (ii), identify all such experiments for (i), identify all such experiments for (ii), identify the individuals involved in (i), identify the individuals involved in (ii), identify all documents for (i) and identify all documents for (ii) as to each of three entities: John Williams, LI-COR and PacBio. PacBio further objects to these interrogatories as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as each of the ten questions relates to any research and development by multiple parties, John Williams, LI-COR and PacBio. PacBio further objects to these interrogatories as ambiguous because they refer to the term "carrying out," which is vague and not defined. PacBio further objects to these interrogatories as premature to the extent that they call for information that is properly the subject of expert discovery before the time for such discovery set by the Court. PacBio further objects to these interrogatories as they relate to information that is outside of PacBio's possession, custody, or control. PacBio further objects to these interrogatories as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as they are not limited to any particular time period. PacBio objects to these interrogatories as premature as they seek information that is related to PacBio's priority case. As explained in the Case Management Order of September 29, 2011, the Court limited the issues at this time to patentability (written description, enablement, and novelty/obviousness) and accorded benefit.

Subject to and without waiving the foregoing objections and its General Objections, PacBio directs Life Technologies to the record in the '677 Interference. PacBio reserves the right to supplement this response.

1    **IV.      CONCLUSION**

2          For the foregoing reasons, the Court should grant Life's motion to compel PacBio.

3

4    Dated:  December 16, 2011                    TROUTMAN SANDERS LLP

5                                                 By:  _____/s/Daniel A. Ladow____
                                                              Daniel A. Ladow
6                                                 Attorney for Life Technologies Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NEWYORK01 1474280v1